IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NetJets Aviation, Inc., *et al.*,

        Plaintiffs,

v.

Stephen G. Perlman., *et al.*,

        Defendants.

Case No: 2:22-cv-2417

Judge Graham

Magistrate Judge Jolson

Opinion and Order

Plaintiffs NetJets Aviation, Inc., NetJets Sales, Inc., and NetJets Services, Inc. bring this action for declaratory judgment. NetJets seeks a declaration that defendants Stephen G. Perlman and the Stephen G. Perlman Revocable Trust are the alter egos of RS Air, LLC, a bankrupt entity. Defendant Perlman (the individual, not the Trust) has asserted four counterclaims under federal and state law. This matter is before the Court on NetJets' motion to dismiss the counterclaims, which is granted for the reasons stated below.

**I.    Background**

In a prior Opinion, the Court detailed the factual background of this case, as well as the lengthy history of litigation between NetJets and RS Air and Perlman. *See* Doc. 34, pp. 1–9. In brief, NetJets sells fractional ownership interests in private business aircraft. In 2001 Perlman formed RS Air, with himself as sole member and manager, and used it to purchase a fractional share in a NetJets aircraft. Over time, RS Air bought shares in two other aircraft. Under a series of purchase and management agreements, RS Air was entitled to a certain number of flight hours per year for each aircraft and had to pay fees for various management and support services provided by NetJets.

The parties' relationship deteriorated in July 2017 when a Cessna Citation X aircraft in which RS Air owned a share was involved in a non-injury incident. The aircraft was damaged and declared a total loss for insurance purposes. Perlman believed that NetJets concealed information about the incident and the insurance proceeds, breached its contractual obligations, and acted in bad faith in

1

attempting to enter into an aircraft substitution agreement with RS Air. NetJets maintained that it had fully complied with its contractual obligations to RS Air and that its substitution offer was fair.

Litigation ensued in Ohio, where NetJets is based, and in California, where RS Air was based and where Perlman resides. Eventually, RS Air filed a Chapter 11 bankruptcy petition in November 2020 in the Northern District of California. *See In re RS Air, LLC*, No. 20-51604 (N.D. Cal. Bankr. Ct.). NetJets filed a proof of claim against RS Air for unpaid amounts under the management agreements. The bankruptcy court allowed NetJets' claim in the amount of $1,767,571.15, following a setoff.

NetJets filed this action, invoking the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. NetJets seeks recovery on the allowed bankruptcy claim, plus interest, from Perlman and the Trust as alleged alter egos of RS Air. A third defendant, Rearden LLC, was dismissed for lack of personal jurisdiction. *See* Doc. 34.

Perlman has filed a Counterclaim, asserting four causes of action against NetJets. One of the counterclaims is brought under the Lanham Act for alleged false representations made by NetJets in advertising its goods and services. *See* 15 U.S.C. § 1125. The remaining three counterclaims are brought in diversity under state law – one counterclaim under the Ohio Deceptive Trade Practices Act and two counterclaims under California law for false advertising and unfair competition. *See* O.R.C. § 4165.02; Cal. Bus. & Prof. Code §§ 17200, 17500.

The factual underpinnings of the counterclaims relate to alleged misrepresentations which NetJets made in promoting its private aircraft program. NetJets claimed that it was "the safest name" and had the "finest fleet" in private aviation, "prioritized safety above all else," and led the industry "in setting safety standards," among other similar statements. Counterclaim, ¶ 20. NetJets also touted the financial benefits of its fractional ownership program, stating that a participant would experience "investment security from a financially stable business model" and would enjoy valuable tax benefits. *Id.*, ¶ 31.

Perlman alleges that in reality NetJets has a "long history of accidents and incidents involving aircraft in its fractional ownership plan." *Id.*, ¶ 24. This made NetJets' claims about the safety of its program false. Customers allegedly suffered injury because NetJets was able to charge higher fees than it would have if the truth about its safety record had been known. And competitors allegedly were harmed because NetJets competed unfairly by making false claims to attract customers.

2

NetJets' representations about the financial benefits of its program also were allegedly false. According to the Counterclaim (and echoing RS Air's position in other proceedings), after the 2017 plane incident, NetJets colluded with insurance companies, brought burdensome litigation against RS Air, and dealt in bad faith in regard to its contractual obligations.  *Id.*, ¶ 34.  Perlman alleges that the representations were false because the financial resources he has expended to deal with the disputes has outweighed the financial benefits he received from NetJets.

**II.     Standard of Review**

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  *Iqbal,* 556 U.S. at 679; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Twombly*, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation").  The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* at 678. Though "[s]pecific facts are not necessary," *Erickson*, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," *Twombly*, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. Lanham Act

The Lanham Act prohibits persons from using a "false or misleading" description or representation of fact in "commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin" of his or another person's "goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). A civil action is available to "any person who believes that he or she is or is likely to be damaged by" the false advertising. *Id.*, § 1125(a)(1).

It has been observed that the Act on its face "could be read to place no limits on the injured parties who may sue over false advertising." *Lewis v. Acuity Real Est. Servs., LLC*, 63 F.4th 1114, 1117 (6th Cir. 2023) (citing cases). "Nearly anyone might claim to have been 'damaged' by a business's false advertising." *Id.* at 1117–18. But courts have confined relief to plaintiffs whose interests "fall within the zone of interests" which the Act protects. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (quotations omitted).

The Supreme Court in *Lexmark* looked to the Act's stated purpose, as it related to false advertising, in finding that Congress's intent was "'to protect persons engaged in [interstate] commerce against unfair competition.'" *Id.* at 131 (quoting 15 U.S.C. § 1127). This "revealed a narrow goal to protect parties only against 'injuries to business reputation and present and future sales.'" *Lewis*, 63 F.4th at 1118 (quoting *Lexmark*, 572 U.S. at 131). "The Court thus interpreted the zone of interests for false-advertising claims to include only businesses that complain about an 'injury to a commercial interest in reputation or sales.'" *Id.* (quoting *Lexmark*, 572 U.S. at 131–32). Consumers, by contrast, "do not fall within this zone of interests even if they waste money on a useless product because the traditional unfair-competition tort did not encompass this consumer

4

harm." *Id.* ("[A] plaintiff suing under § 1125(a) of the Lanham Act must allege a commercial—not a consumer—injury.").

Perlman's Counterclaim recognizes the distinction between consumer and competitor injuries. Regarding the claims under California law, for instance, Perlman alleges that he was a consumer of air travel services and relied on NetJets' false advertising in deciding to participate, through RS Air, in NetJets' fractional ownership program. Regarding the Lanham Act, Perlman asserts that he is a competitor of NetJets. *See* Counterclaim, ¶ 10. He alleges that NetJets' false advertising of the safety and financial benefits of its program allows it to compete unfairly. Perlman further alleges that he is an inventor of technologies "in the private aircraft travel space" and that his "technology is competitive with NetJets." *Id.*, ¶ 57.

NetJets moves to dismiss the latter claim on the grounds that Perlman lacks standing to sue under the Lanham Act. NetJets challenges whether Perlman has adequately alleged standing by way of a concrete injury in fact. Though Perlman purports to be a competitor, NetJets argues that this assertion is conclusory and he has not alleged facts establishing that he has suffered a commercial injury for which the Lanham Act provides a remedy. NetJets argues that while Perlman makes vague references to developing inventions related to aircraft travel, he has not made factual allegations which support an inference that he is competing with NetJets and has suffered an injury to his business reputation or sales.

In response, Perlman argues that his status as a competitor hinges upon him being an inventor of technologies in the aircraft travel sector. *See* Doc. 49, p. 9. He makes reference to his earlier-filed Declaration in which he said he was working on a "concept" design whereby he "could develop electric-powered commuter aircraft powered by radio waves."[1] *See* Perlman Decl., ¶ 74. This would serve as an alternative to NetJets' program of operating "expensive, noisy, fuel-burning jets." *Id.* Though not an allegation made in the Counterclaim or Declaration, Perlman maintains in his response brief that he has been "awarded patents disruptive of the traditional approach to private aircraft design" and has "developed a system for tracking accidents and incidents involving private aircraft operators." Doc. 49, pp. 10–11.

The Court finds that the Counterclaim fails to state a cause of action under the Lanham Act. As an initial matter, Perlman does not allege that he directly competes with NetJets in the marketplace for private air travel services. He has not operated in the past, nor does he presently

---

[1] The Counterclaim incorporates two declarations executed by Perlman. *See* Docs. 9-1, 9-2. For purposes of evaluating the motion to dismiss, the Court refers to the Declaration found at Doc. 9-2.

5

operate, a business which provides air transportation services to consumers. The Counterclaim characterizes the technology which Perlman is developing as being "competitive" with NetJets, but it does not allege that the technology is currently competing with NetJets.

It is true, as Perlman points out, that a person suing under the Lanham Act need not be a "direct competitor" of the alleged false advertiser. *Lewis*, 63 F.4th at 1118–19 (explaining that it is the nature of the injury, not the plaintiff, which matters). Nonetheless, Perlman must allege some non-speculative commercial injury to his reputation or sales proximately caused by the false advertising. *See Lexmark*, 572 U.S. at 132–33; *Lewis*, 63 F.4th at 1119; *Eastpointe DWC, LLC v. Wing Snob Inc.*, No. 19-13768, 2021 WL 4478749, at *6 (E.D. Mich. Sept. 30, 2021). Ordinarily, that requires allegations of "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which occurs "when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133.

Even accepting the allegations made in the Counterclaim and incorporated Declaration as true, the Court finds they do not support an inference that Perlman has suffered an injury to reputation or sales. According to the Counterclaim, Perlman is developing "nascent" technologies which someday could be used in the aviation industry. Counterclaim., ¶ 30. The Declaration describes his "concept" of electric-powered commuter aircraft as a "long-term, high-risk business that would require significant venture funding." Perlman Decl., ¶ 74. Perlman envisions that "any new technology" developed from his inventions "will take time to develop" before it is "ultimately" ready to compete with businesses using traditional fuel-powered aircraft. *Id.*

Perlman's allegations do not support a reasonable reference that he has actually suffered an injury to his commercial reputation or sales. Rather, his allegations outline future plans for the use of technology he is currently developing. Perlman's legal brief emphasizes that the Court cannot ignore his outstanding history as a "prominent and prolific inventor in various technology fields and developer of start-up companies." Doc. 49, p. 10. But even if Perlman is a sure bet to live up to his track record of turning his inventions into start-up companies, any harm caused to his commercial reputation or sales by NetJets' false advertising has not yet materialized. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-40 (2016) (standing to sue requires a party to allege a concrete injury which actually exists).

Finally, according to the Counterclaim, NetJets' false advertising practices enable it to "generate revenue" which "funds NetJets' resistance to the development of [Perlman's] nascent competing technologies" and "funds NetJets' attacks" on Perlman and his start-up companies.

6

Counterclaim, ¶ 30. This allegedly makes it more expensive for Perlman to develop his technologies and damages his reputation. *Id.* Putting aside the Counterclaim's lack of clarity as to how NetJets has resisted and attacked Perlman, the Court finds that these allegations fail to put Perlman's injuries within the zone of interests protected by the Lanham Act.[2] It is not NetJets' false advertising practices which have proximately caused harm to Perlman's business and reputation. Rather, the alleged cause of harm is NetJets' decision to take the money it earns from false advertising and spend it on attacking Perlman and his companies. *See also* Counterclaim, ¶ 38 (alleging that the "NetJets' program finances the on-going [legal] claims and attacks against Counterclaimant and his affiliated companies, including RS Air"). The source of the funds, whether ill-gotten gain or otherwise, is irrelevant. It is NetJets' "attacks" on Perlman, and not false advertising about its jet ownership program, which is causing the harm.

In sum, the Counterclaim and incorporated Declaration do not set forth factual allegations supporting an inference that NetJets' alleged false advertising has caused injuries to Perlman's commercial interest in reputation or sales. The Court thus grants the motion to dismiss the Lanham Act counterclaim.

## IV. Ohio Deceptive Trade Practices Act (ODTPA)

Like the Lanham Act, the ODTPA prohibits the making of false or misleading representations regarding the source, characteristics, or quality of goods and services. *See* O.R.C. § 4165.02(A)(7), (9), (11). And, as with the Lanham Act, a consumer lacks standing to bring suit under the ODTPA. *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 873 (S.D. Ohio 2012).

---

[2] The "attacks" themselves are not alleged to have constituted false advertising. For example, Perlman does not allege that NetJets made false representations in commercial advertising about the nature of his inventions.

Perlman's second Declaration (Doc. 9-1) and his brief in response to the motion to dismiss shed light on this matter. Perlman views NetJets' litigation efforts as attacks on him and his companies. *See* Doc. 9-1, ¶¶ 11–14 (attributing RS Air's bankruptcy to its inability to maintain funding for its defense of litigation initiated by NetJets); Doc. 47, p. 3 (arguing that NetJets' ongoing litigation is "motivated by its efforts to undermine [Perlman's] development of competitive inventions in aircraft travel markets"); *id.*, p. 14 (arguing that Perlman has been injured in terms of "the time and costs incurred in responding to NetJets' on-going prosecution of claims against him in retribution for discovering NetJets' false advertising"). The Counterclaim similarly alleges that NetJets "will attack the Jetshare Owner's corporate form," which likely refers to NetJets asserting in this lawsuit that Perlman is the alter ego of RS Air. Counterclaim, ¶ 34(b).

"Ohio courts analyze ODTPA claims like claims based on Section 43(a) of the Lanham Act." *Bold Home Prod., LLC v. Carbonklean, LLC*, No. 2:20-CV-4020, 2023 WL 155901, at *8 (S.D. Ohio Jan. 11, 2023). *See also Evanston Ins. Co. v. Certified Steel Stud Ass'n, Inc.*, 787 Fed. App'x 879, 885 (6th Cir. 2019) ("Courts in Ohio analyze ODTPA claims in the same way that they analyze claims based on Section 43(a) of the Lanham Act."); *Porsche Cars*, 880 F.Supp.2d at 873; *Chandler & Assoc., Inc. v. Am.'s Healthcare All., Inc.*, 125 Ohio App. 3d 572, 580, 709 N.E.2d 190, 195 (1997) (finding that the "same analysis" applies).

Perlman concedes that *Lexmark*'s "standard for standing under the Lanham Act also dictates standing under ODTPA." Doc. 49, p. 9 n. 8 (citing *Roof Maxx Techs., LLC v. Holsinger*, No. 2:20-CV-03154, 2021 WL 3617153, at *7 (S.D. Ohio Aug. 16, 2021)). Because, as explained above, the Counterclaim does not set forth factual allegations which support a plausible inference that NetJets' false advertising about the safety and financial benefits of its program proximately caused injuries to Perlman's business interests, the Court finds that the ODTPA claim fails as a matter of law.

V.     **California Unfair Competition and False Advertising Laws (UCL and FAL)**

     A.     **Overview**

Perlman alleges that NetJets' false advertising about its fractional aircraft ownership program violates both the UCL and FAL. California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. California's FAL prohibits the use of "untrue or misleading" statements with the intent to induce the public to enter into any obligation relating to goods or services. *Id.*, § 17500. Both laws provide for a private right of action. *See Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949–50, 45 P.3d 243, 249–50 (2002).

The UCL "permits violations of other laws to be treated as unfair competition that is independently actionable." *Id.*, 27 Cal. 4th at 949, 45 P.3d at 249. By prohibiting "unlawful" business practices, "section 17200 borrows violations of other laws and treats them as unlawful practices." *Abbott Lab'ys v. Superior Ct. of Orange Cnty.*, 9 Cal. 5th 642, 651–52, 467 P.3d 184, 188 (2020) (quotations omitted). In light of the overlap – especially with both statutes prohibiting false advertising – courts have "recognized that any violation of the false advertising law necessarily violates the UCL." *Kasky*, 27 Cal. 4th at 950–51, 45 P.3d at 250 (cleaned up); *accord Great Pac. Sec. v. Barclays Cap., Inc.*, 743 Fed. App'x 780, 783 (9th Cir. 2018) ("Violations of the FAL necessarily support a UCL claim.").

8

Unlike the Lanham Act, the California laws offer recourse to both competitors and consumers. *See, e.g.*, *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-CV-01280-JST, 2021 WL 11593043, at *6 (N.D. Cal. Aug. 16, 2021); *Kasky*, 27 Cal.4th 939 at 949, 45 P.3d at 249 (noting that the statutory "purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services"). The Counterclaim alleges that Perlman is both a competitor and a consumer in relation to NetJets, and it asserts claims based upon both types of theories. *See* Counterclaim, ¶¶ 27, 30, 37, 38, 44, 54.

### B. Perlman's Claims as a Competitor

NetJets argues that the UCL and FAL competitor claims fail for at least two reasons. First, the Counterclaim fails to plead that Perlman relied upon NetJets' allegedly false statements about the safety and financial benefits of its program. Second, NetJets repeats its argument that Perlman has not alleged an injury in fact.

Reliance refers to the causal connection between the false statement and the economic injury, and actual reliance on a misrepresentation is a required element in consumer claims under the UCL and FAL. *See Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310, 326–27, 246 P.3d 877, 887–88 (2011). However, the case law is less clear for competitor claims. *See L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F.Supp.3d 852, 866 (N.D. Cal. 2015) (noting that in the absence of a California state court decision, federal courts have disagreed over "whether competitor plaintiffs must plead their own reliance, or whether pleading consumer reliance is sufficient for fraudulent business practices claims brought by competitors").

What has been called the majority view holds that a competitor plaintiff "must allege its own reliance and not the reliance of third parties." *Zest Anchors, LLC v. Geryon Ventures, LLC*, No. 22-CV-230 TWR (NLS), 2023 WL 2903668, at *7 n.3 (S.D. Cal. Apr. 10, 2023) (quotations omitted); *see also Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 20CV1765-GPC(BGS), 2021 WL 1541649, at *8 (S.D. Cal. Apr. 20, 2021). This view is grounded in the text of Proposition 64, which California voters passed in 2004. Proposition 64 "restricts standing for individuals alleging UCL and FAL claims to persons who have suffered injury in fact and have lost money or property as a result of the unfair competition." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013) (cleaned up). Textually, the phrase "as a result of" is what courts have said supplies the reliance requirement. *See In re Outlaw Lab'y, LLP*, 463 F.Supp.3d 1068, 1085–86 (S.D. Cal. 2020) (citing *Kwikset*); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326, 207 P.3d 20, 39 (2009) (concluding that Proposition 64 added "an

9

actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong").

But a "'growing chorus' of federal district courts have held individual reliance is not required for statutory standing where a competitor plaintiff alleges fraudulent competition based on a defendant's misrepresentation if the plaintiff has alleged a sufficient causal connection between the misrepresentation and the plaintiff's injury." *Faire Wholesale, Inc. v. Tundra, Inc.*, No. 23-CV-02538-JSC, 2023 WL 8586681, at *8 (N.D. Cal. Dec. 8, 2023). These courts reason that imposing a reliance requirement on competitors "makes little sense" because it is difficult "to imagine a scenario" where "a competitor plaintiff would rely on a competitor defendant's misleading advertisements and suffer injury." *Allergan USA Inc. v. Imprimis Pharms., Inc.*, No. SACV171551DOCJDEX, 2017 WL 10526121, at *13 (C.D. Cal. Nov. 14, 2017); *see also Scilex*, 2021 WL 11593043, at *6.

This Court, as a federal court in Ohio, follows the majority view requiring that competitor claims must establish reliance upon the alleged false advertising. *See Williams-Sonoma, Inc. v. Wayfair, Inc.*, 652 F.Supp.3d 216, 225 (D. Mass. 2023) (explaining the split in authority and following the majority view). Perlman has not alleged reliance and thus has failed to state a competitor claim under the UCL and FAL.

Even if reliance is not an element of a competitor claim, the plaintiff nonetheless must show an injury in fact. *See Faire Wholesale*, 2023 WL 8586681, at *7 ("Statutory standing under California's UCL is limited to those who have suffered injury in fact and lost money or property as a result of the unfair competition."). Thus, minority-view courts still require plaintiffs to establish a causal connection between the misrepresentation and the injury. *See id.* at *8 (stating that under the minority view, reliance is excused only "if the plaintiff has alleged a sufficient causal connection between the misrepresentation and the plaintiff's injury"); *Lona's Lil Eats, LLC. V. DoorDash, Inc.*, No. 20-cv-06703-TSH, 2021 WL 151978, at *11 (N.D. Cal. Jan. 18, 2021) ("[T]here are situations where the element of causation can be proved without showing actual reliance, so as long as there's sufficient causation."); *Scilex*, 2021 WL 11593043, at *6 (same).

The necessary causal connection is similar to, if not the same as, the required showing discussed above regarding the Lanham Act. *See Scilex*, 2021 WL 11593043, at **3–7; *Allbirds, Inc. v. Giesswein Walkwaren AG*, No. 19-CV-05638-BLF, 2020 WL 6826487, at **3–4 (N.D. Cal. June 4, 2020) (analyzing standing under the Lanham Act and UCL and FAL under the same standard). "'In a false advertising suit, a plaintiff establishes Article III injury if some consumers who bought the defendant's product under a mistaken belief fostered by the defendant would have otherwise bought

10

the plaintiff's product.'" *Scilex*, 2021 WL 11593043, at *3 (quoting *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011)). The causal connection can be made through a showing of lost business or lost sales or can be made through a chain of inferences linking the false advertising to evidence of competition and plaintiff suffering a reputational injury or smaller market share. *See id.*; *Allbirds*, 2020 WL 6826487, at *4; *Lona's*, 2021 WL 151978, at *9 (sufficient causal connection where customers relied on defendant's misrepresentation and withheld their business from plaintiff). *Cf. Lexmark*, 572 U.S. at 132–33 (Lanham Act requires a showing of an "injury to a commercial interest in reputation or sales," which occurs "when deception of consumers causes them to withhold trade from the plaintiff").

For the reasons discussed above in relation to the Lanham Act claim, the Counterclaim's allegations fail to support an inference that Perlman suffered any injury to business sales or reputation as a result of NetJets' alleged false advertising or unfair competition. The Counterclaim does not support an inference that Perlman has competed with NetJets in the marketplace for private air travel services or that he has developed technologies which have competed, or currently compete, with NetJets' program. *See TrafficSchool.com*, 653 F.3d at 825 (to establish an injury, plaintiff must show that sales gained by defendant from its false ads were "likely to come at the [plaintiff's] expense"). Thus, the Court finds that Perlman's competitor claims under the UCL and FAL fail as a matter of law.

### C. Perlman's Claims as a Consumer

#### 1. Representations about Safety

Perlman alleges that NetJets falsely promoted the safety of its aircraft and program and that he relied on the misrepresentations in deciding to purchase fractional ownership interests. The Counterclaim identifies 24 statements (addressed in detail below) which allegedly were untrue because NetJets had a history of incidents with its aircraft, including the July 2017 incident which led to the decline of the parties' relationship.

NetJets argues that the statements at issue are "puffery." Under California law, "[a]dvertising that amounts to 'mere' puffery is not actionable because no reasonable consumer relies on puffery." *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994); *accord In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1233 (N.D. Cal. 2012) (UCL and FAL claims). Puffery is defined as "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997). "The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual

11

assertions." *Haskell*, 857 F. Supp. at 1399. "Product superiority claims that are vague or highly subjective often amount to nonactionable puffery." *Southland*, 108 F.3d at 1145. In contrast, a "specific and measurable" claim regarding a product or service is not puffery. *Id.* A court may determine whether an alleged misrepresentation is puffery as a matter of law at the motion to dismiss stage. *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008); *Favell v. Univ. of S. California*, No. CV 23-3389-GW-MARX, 2024 WL 751006, at *6 (C.D. Cal. Jan. 23, 2024) (noting that "district courts often dismiss claims under California's consumer protection statutes as puffery at the pleading stage").

The 24 statements at issue can be separated into four categories. The categories are statements about: (1) the condition of NetJets' planes, (2) NetJets' commitment to ensure the safety of its planes, (3) how NetJets is known for its commitment to safety, and (4) how participants can have peace of mind choosing NetJets.[3] As explained below, the Court finds that all of the alleged statements are puffery.

### a. The "Finest Fleet in Private Aviation"

In the first category are statements by NetJets that it provides a "perfect plane every time," has the "cleanest and best-maintained jets in the world," and features the "finest fleet in private aviation." Counterclaim, ¶ 20(a), (b), (e), (g). Puffery includes "a general claim of superiority or exaggeration which is expressed in broad, vague or commendatory language and lacks the kind of detailed or specific factual assertions that are necessary to test the truth of the claim." *Favell*, 2024 WL 751006, at *6 (quotations omitted). The Court finds that NetJets' claims of having "perfect," the "cleanest," the "best," and the "finest" planes amount to classic puffery – they are claims of superiority which are vague, subjective, and not measurable. *See, e.g., Hawkins v. Shimano N. Am. Bicycle Inc.*, No. 8:23-CV-02038-JVS (JDE), 2024 WL 2105596, at *12 (C.D. Cal. Apr. 12, 2024) (finding to be puffery a bicycle parts manufacturer's claims that its products were the "best choice," offered the "finest" performance, and were "perfect, simply the best"); *In re Apple Sec. Litig.*, 9243 F. Supp. 2d 1012, 1017, 1025 (N.D. Cal. 2002) (Apple CEO's description of its product as "perfect" is puffery); *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626, 649 (E.D. Mich. 2019) (defendant's claims that its "trucks are the cleanest or best in the world are nonactionable puffery").

Perlman contends that the statements should be evaluated in their context, and the Court agrees with this proposition. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008). However, the Counterclaim itself fails to provide context, other than to allege that the statements

---

[3] A handful of statements could be construed to fit into more than one category.

about safety appear on NetJets' "current" website.[4] Counterclaim, ¶ 20. The Counterclaim then lists the 24 statements in isolated fashion, without providing any additional context. For instance, there are no context clues alleged in the Counterclaim to determine if by "cleanest," it is meant that the planes were free of dirt or had low-emission engines. *See Vancouver Alumni Asset Holdings Inc. v. Daimler AG*, No. CV1602942SJOKSX, 2017 WL 2378369, at **12–13 (C.D. Cal. May 31, 2017) (discussing puffery and claims of "clean diesel" engines in the context of emission regulations). Without more context provided, the Court finds that the terms "perfect," "cleanest," "best," and "finest" – made in reference to NetJets' fleet of planes – are puffery. This case is thus distinguishable from those cases in which courts have found that the descriptors "finest grade" and "finest quality ingredients" were not mere puffery because of the context and level of specificity of the statement. *See Golden v. Home Depot, U.S.A., Inc.*, No. 118CV00033LJOJLT, 2018 WL 2441580, at *10 (E.D. Cal. May 31, 2018) (finding that the phrase "finest grade" of mahogany wood had a discernable meaning in connection with the sale of lumber);.*Endres v. Newell Brands, Inc.*, No. CV 24-00952-MWF (DFMX), 2024 WL 3915055, at *4 (C.D. Cal. May 14, 2024) (finding that the phrases "finest quality ingredients" and "high quality fragrances" in relation to product line of premium candles were specific quality assurances which could be objectively verified).

b. An "Uncompromising Commitment to Safety"

The second category of statements relate to NetJets' commitment to ensure the safety of its planes and customers. For instance, NetJets claimed: "we continually work on our fleet to ensure every flight is a safe flight"; "our unwavering commitment to the safety and security of our Owners is evident in every decision, and every investment we make"; "our training, investment, experience, and standards are second to none"; "when taking every precaution matters, NetJets will always be the smart advantage"; and it is our "uncompromising commitment to safety that truly sets us apart." Counterclaim, ¶ 20(c), (l), (m), (o), (r), (w).

The Court finds that these statements too are puffery because they express a generalized commitment to safety, unaccompanied by specific, verifiable promises or factual assertions. NetJets describes its commitment as "continual[]," "unwavering," and "uncompromising," such that NetJets is "second to none," the "smart" choice, and "set[] apart" from the competition. In neither his

---

[4] As NetJets points out, the Counterclaim's citation to the current website raises doubts about Perlman's actual reliance on the alleged misrepresentations – how could have Perlman, a NetJets customer from 2001 to 2017, relied on statements made on NetJets' current website? But liberally construing the Counterclaim, the Court finds it alleges that the same types of statements have historically appeared on the website. *See* Counterclaim, ¶ 21.

13

Counterclaim nor his brief in opposition to the motion to dismiss has Perlman set forth a basis for how NetJets' subjective claims of commitment and superiority can be measured or verified.[5] *See DeSoto Cab Co., Inc. v. Uber Techs., Inc.*, No. 16-CV-06385-JSW, 2018 WL 10247483, at *12 (N.D. Cal. Sept. 24, 2018) (claims of a commitment to providing "the safest ride on the road" and having the "gold standard" of safety practices were too "vague" and "hyperbolic" to be actionable); *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019) (general statements of having a commitment to complying with norms or standards are puffery); *Popham v. Keystone RV Co.*, No. 3:15-CV-197-TLS, 2017 WL 131726, at *4 (N.D. Ind. Jan. 13, 2017) (statement of a product being "'second to none' is highly subjective and indicative of a statement of opinion, and not at all a quantifiably measurable statement").

Continuing with the second category, Perlman alleges that NetJets made claims about its safety program, including its procedures and policies. These claims, if specific, potentially could move past mere puffery. However, the Court finds that NetJets' claims, as alleged in the Counterclaim, stayed at a vague, subjective level. NetJets allegedly represented:

- "You will recognize it [a commitment to safety] in our proven procedures, innovative technologies, and dedicated individuals, all focused on one thing: your safety."
- Its safety program was "a formal, top-down, organization-wide approach to managing safety risk and assuring the effectiveness of safety risk controls."
- It had "[f]ormalized policies to encourage and support safety reporting even if the topic involves individual error."
- It was "unique in the way we prioritize SMS [safety management systems] and other safety programs."

Counterclaim, ¶ 20(s), (t), (u), (v).[6]

NetJets' described its approach to safety with such words as "proven," "innovative," "dedicated," "top-down," "formalized," and "unique." *See 3226701 Canada, Inc. v. Qualcomm, Inc.*, No. 15CV2678-MMA (WVG), 2017 WL 971846, at *9 (S.D. Cal. Jan. 27, 2017) ("vague statements

---

[5] Perlman does not allege that NetJets failed to maintain its fleet, train its staff, or implement safety standards.

[6] Again, Perlman does not allege that NetJets actually lacked safety programs, procedures, or policies. Rather, he contends that the claims produced the misleading impression that NetJets was committed to safety. *See* Doc. 49, p. 20 (arguing that the gist of NetJets' claims was "you can trust us with your life"). In the same vein, the Counterclaim's allegation that NetJets' safety record was "not as advertised" refers to the impression NetJets created of its commitment to safety. Counterclaim, ¶ 23. Perlman does not allege that NetJets claimed it had never experienced an incident with one of its planes.

of optimism" and "feel good monikers" are not actionable). Missing from these claims was a concrete representation about the substance or content of a procedure or policy. *See Newcal*, 513 F.3d at 1053 ("Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim."). NetJets did not, for example, state that each of its aircraft had certain safety technologies aboard or that every member of its maintenance staff had a particular type of training and certification. In the context provided, NetJets' statements that its safety program was "proven" and "unique" cannot be objectively verified.[7]

Perlman cites to a decision in which the court rejected a puffery argument concerning a vehicle-leasing business's advertisement that it had a "comprehensive" maintenance program. *See Bush Truck Leasing, Inc. v. All Ways Auto Transp., LLC*, No. 1:20-CV-511, 2021 WL 3173073, at *10 (S.D. Ohio July 26, 2021). But critically in *Bush Truck* the advertising of the program included express representations of the specific products and services which were included in the program. *See id.* (tire replacements, alignments, 24-hour emergency road service, etc.). Here, there are no allegations that NetJets made specific representations about the features of its safety program.

### c. The "Safest Name in Private Aviation"

The third category of statements relate to NetJets' prominence and reputation in the aviation field. These include the claims that NetJets: is "known for our unwavering commitment to safety"; "has led the private aviation industry by prioritizing safety above all else"; "has established itself as the safest name in private aviation"; and has "led the industry in setting safety standards." Counterclaim, ¶ 20(d), (h), (k), (n), (q).

The Court readily finds that these boastful claims are puffery because they do not relate to an objectively verifiable fact. *See Edmunson v. Procter & Gamble Co.*, No. 10-CV-2256-IEG NLS, 2011 WL 1897625, at *3 (S.D. Cal. May 17, 2011) ("An alleged misrepresentation must relate to an objectively verifiable fact; subjective representations related to product superiority are mere puffery and are not actionable."); *Consumer Advocate v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 & n.3 (2003) (holding that "a claim which no reasonable consumer would take as anything more weighty than an advertising slogan" is not actionable). Language that a business or product is "industry leading" is classic, nonactionable puffery. *Taleshpour v. Apple Inc.*, No. 5:20-CV-03122-EJD,

---

[7] On could certainly argue that the question of whether NetJets had a formalized policy to require safety reporting could be ascertained. Even so, the Counterclaim does not allege that NetJets lacked such a policy or that NetJets deviated from its policy. The Counterclaim thus fails to allege the essential element under California law that the statement was untrue or misleading.

2021 WL 1197494, at *9 (N.D. Cal. Mar. 30, 2021) (citing *Intertape Polymer Corp. v. Inspired Techs., Inc.*, 725 F. Supp. 2d 1319, 1334 (M.D. Fla. 2010)); *see also 3226701 Canada*, 2017 WL 971846, at *9; *Rankin v. Glob. Tel\*Link Corp.*, No. 13-CV-01117-JCS, 2013 WL 3456949, at *14 (N.D. Cal. July 9, 2013).

### d. "Flying with NetJets Means Peace of Mind"

Fourth, NetJets claimed on its website that participants in its fractional ownership program would have peace of mind. NetJets stated that: "flying with NetJets means peace of mind—and that is the ultimate luxury"; "we protect every Owner as if they are family"; "Owners rest assured knowing that every aspect of the travel experience—in the air and on the ground—is expertly managed"; owners "can rest easy knowing NetJets take every precaution necessary to keep you safe"; and "NetJets Owners are afforded the luxury of knowing their safety and travel needs are prioritized at the highest level." Counterclaim, ¶ 20(f), (i), (j), (p), (x).

Here too the Court finds that terms like "peace of mind," protected like "family," "rest assured," "rest easy," and "afforded the luxury" are vague and subjective, not specific and measurable. *See Sims v. Kia Motors Am., Inc.*, No. SACV131791AGDFMX, 2014 WL 12558249, at *7 (C.D. Cal. Mar. 31, 2014) (advertisement that defendant's vehicles would give consumers "peace of mind" was puffery); *Suozzo v. Beck Chevrolet Co.*, No. 22-CV-1071 (PMH), 2022 WL 428424, at *3 (S.D.N.Y. Feb. 11, 2022) (treated "like family"); *In re Fontem US, Inc. Consumer Class Action Litig.*, No. SACV1501026JVSRAOX, 2016 WL 11503066, at *8 (C.D. Cal. Apr. 22, 2016) ("rest easy"); *Catena v. NVR, Inc.*, No. 23-1642, 2024 WL 4003085, at *5 (3d Cir. Aug. 30, 2024) ("luxury"). No reasonable consumer would be inclined to think of these statements as ones of fact. *See Bezirganyan v. BMW of N. Am., LLC*, 562 F. Supp. 3d 633, 643 (C.D. Cal. 2021).

Accordingly, the Court finds that all of Perlman's consumer claims under the UCL and FAL regarding NetJets's representations about safety fail as a matter of law.

### 2. Non-Disclosure of Incidents

The Counterclaim alleges that over a period of 24 years NetJets had 34 aircraft-related incidents, which it failed to disclose to consumers. *See* Counterclaim, ¶¶ 23–24. The nature of the incidents included malfunctioning landing gear, runway excursions, an equipment bay fire, an improperly-secured service door, and failure to timely activate a seat belt sign. While it is unclear whether Perlman seeks to assert a separate claim for non-disclosure, NetJets argues that any omission-based false advertising claim must fail because the Counterclaim does not set forth allegations supporting an inference that NetJets had a duty to disclose.

16

Absent a duty to disclose, an omission does not support a false advertising claim under the UCL and FAL. *See Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 666 (N.D. Cal. 2016) (citing cases). Such a duty exists where a special relationship exists between the parties or where omitted information renders an affirmative representation misleading. *See Long v. Hewlett-Packard Co.*, 316 Fed. App'x 585, 586 (9th Cir. 2009); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835–36, 51 Cal. Rptr. 3d 118, 126–27 (2006). A special relationship is not alleged here.

Neither the Counterclaim nor the brief in opposition explain how NetJets' affirmative representations are "likely to mislead for want of communication of" the list of past incidents. *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1276, 39 Cal. Rptr. 3d 634, 648 (2006). NetJets is not alleged to have represented that it had an incident-free record or that its planes had never experienced a mechanical issue. *See Daugherty*, 144 Cal. App. 4th at 835, 51 Cal. Rptr. 3d at 126 ("[T]o be actionable the omission must be contrary to a representation actually made by the defendant."). Rather, as explained above, NetJets made generalized, subjective statements about its commitment to safety which no reasonable consumer would have taken to mean that NetJets had a problem-free history of operations. *Cf. Munch v. Sears Roebuck & Co.*, No. 06C7023, 2007 WL 2461660, at *2 (N.D. Ill. Aug. 27, 2007) (dismissing consumer claim for fraudulent concealment where it is understood that some percentage of "complex machines" will experience issues).

### 3. Representations about Financial Benefits

Perlman alleges that NetJets falsely promoted the financial benefits of participating in the fractional ownership program. The Counterclaim identifies six false statements:

1. "As a NetJets Owner, your investment is secure and your liquidity is guaranteed";
2. There is "[i]nvestment security from a financially stable business model";
3. NetJets has "the backing of Berkshire Hathaway";
4. There are "[z]ero hidden or extra fees";
5. "A NetJets Share provides the valuable tax benefit of owning a portion of an asset without the large capital outlay"; and
6. NetJets will protect the personal security and privacy of owners.

Counterclaim, ¶ 31. As with the statements about safety, the Counterclaim provides no further context other than to allege that the statements currently appear on NetJets' website.

NetJets argues that several of the statements are nonactionable puffery.[8] The Court agrees. The first and second statements promote "investment security" and "stability." It is not enough for

---

[8] In response to the motion to dismiss, Perlman did not address NetJets' argument that certain of the financial benefits statements were puffery. Perlman addressed only the safety-related statements.

17

a plaintiff to rest on "allegations that the investment was said to be 'safe,' or 'secure'" absent specific representations and context about, for instance, profitability levels or how risk is managed. *Gavaldon v. Standard Chartered Bank Int'l (Americas) Ltd.*, No. 16CV590-LAB (MDD), 2020 WL 835311, at *8 (S.D. Cal. Feb. 20, 2020). *See also Kalin v. Semper Midas Fund, Ltd.*, No. 4:21-CV-01062-YGR, 2021 WL 5906053, at *5 (N.D. Cal. Dec. 14, 2021) (statements which generally "assured the safety and security of the Fund's investment" were puffery); *Irving v. Lennar Corp.*, No. 2:12-CV-0290 KJM EFB, 2013 WL 4900402, at **8–9 (E.D. Cal. Sept. 11, 2013) (representation that real estate was a "good" investment because of the "stability" of the market was puffery); *Landow v. Bartlett*, No. 218CV00499JADVCF, 2019 WL 8064074, at *3 (D. Nev. Nov. 18, 2019) ("[C]laims that the investments were 'conservative/moderate risk' are not actionable in fraud because general claims as to the safety of an investment are non-actionable puffery and not capable of objective verification.") (footnote omitted). So too, general assurances about liquidity are puffery. *See Kalin v. Semper Midas Fund, Ltd.*, No. 4:21-CV-01062-YGR, 2022 WL 16935782, at *5 (N.D. Cal. Oct. 12, 2022), *aff'd*, No. 22-16766, 2023 WL 8821325 (9th Cir. Dec. 21, 2023); *Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 211–12 (S.D.N.Y. 2020); *Last Atlantis Capital LLC v. AGS Specialist Partners*, 749 F. Supp. 2d 828, 840 (N.D. Ill. 2010).

The sixth statement is also puffery. As an initial matter, "personal security" could be referring to something different than financial security, but the Counterclaim categorizes it as a statement about financial benefits. In any event, the problem again is the vague, unmeasurable nature of the alleged statement that NetJets would "protect" the "security and privacy of owners." The Counterclaim does not allege that NetJets made any specific representations about how it would protect those interests. *See Gavaldon*, 2020 WL 835311, at *8; *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 96, 135 (D. Md. 2021) (general statement of commitment to safeguard customers' privacy is not actionable) (citing cases); *Mehta v. Robinhood Fin. LLC*, No. 21-CV-01013-SVK, 2021 WL 6882377, at *9–10 (N.D. Cal. May 6, 2021) (same); *In re Intel Corp. Sec. Litig.*, No. 18-CV-00507-YGR, 2019 WL 1427660, at *9 (N.D. Cal. Mar. 29, 2019) (general assurances of protecting security and privacy are puffery).

The Court now turns to the third, fourth, and fifth statements. The Counterclaim does not set forth how any of these statements were actually false. Indeed, the Counterclaim states that NetJets did have the financial backing of Berkshire Hathaway. *See* Counterclaim, ¶ 34(c). The Counterclaim points to no hidden fees or charges which NetJets imposed on Perlman or RS Air.

18

And Perlman admits in his Declaration that RS Air received a depreciation tax benefit of over $1.3 million between 2007 and 2017. *See* Perlman Dec., ¶ 8.

Perlman instead appears to argue that together the statements, including the ones about investment security, created the misleading impression that NetJets would be looking out for the financial well-being of its customers. This was not the experience of Perlman, who claims that after the 2017 plane incident, NetJets used the immense financial resources of Berkshire Hathaway to engage in "corporate-scale litigation" to attack RS Air, forcing Perlman to expend "time and expenses far in excess of the value of [his] investment" in the program. Counterclaim, ¶ 34(c). NetJets allegedly covered up information about the incident and colluded with its insurers to frustrate Perlman's efforts to obtain records. And NetJets allegedly dealt in bad faith in refusing to fulfill its contractual obligation to repurchase jet shares from RS Air. In other words, the overall financial value to Perlman of his participation in the NetJets program has been negated by the ongoing disputes which he and RS Air has had with NetJets since 2017.

Perlman's allegations fail to state a claim under the UCL or FAL. Simply put, the injury alleged – the resources expended in contract and insurance disputes, litigation, and bankruptcy proceedings – is too remote from NetJets' advertising. Perlman does not allege an injury caused by his reliance on the false advertising. *See Kwikset*, 51 Cal. 4th at 322, 246 P.3d at 885 (for claims under the UCL and FAL, a consumer must show that he suffered an economic injury that was caused by the false advertising). The injury-producing conduct is NetJets' alleged post-incident behavior, not the pre-transaction false representations on which Perlman relied. Nowhere does the Counterclaim deny that Perlman received the advertised financial and tax benefits from 2001 and 2017. It was not until an alleged breach of contract and the ensuing legal battles that he was in the red with respect to NetJets.

It cannot be overlooked that the purpose of the UCL and FAL is to protect consumers by promoting fair competition. *See Solus Indus. Innovations, LLC v. Superior Ct.*, 4 Cal. 5th 316, 340, 410 P.3d 32, 46–47 (2018). The conduct of which Perlman complains at its core is breach of contract, bad faith, and abuse of process by NetJets against RS Air. The allegedly extreme consequences of the parties' inability to resolve their post-incident disputes is not what the UCL and FAL were meant to protect against. This can be illustrated by reference to the fundamental principal that "[u]nder the consumer protection claims at issue here, injury is the payment of an overcharge at the time of purchase." *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 1000

(N.D. Cal. 2022). The "overcharge" is the amount extra a consumer pays because of false information. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015).

To that end, the UCL and FAL provide for "only the equitable remedies of restitution and injunctive relief." *Philips v. Ford Motor Co.*, No. 14–CV–02989–LHK, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015) (citing cases); *In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1090 (S.D. Cal. 2020) (money damages not available). And restitution "under the UCL and FAL is limited to money or property that [the unfair competitor] took directly from a plaintiff." *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 867–68 (N.D. Cal. 2015) (quotations omitted); *see also Kwikset*, 51 Cal. 4th at 336, 246 P.3d at 895 (restitution "requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other."). Here, Perlman's alleged economic damages are not an overcharge paid to NetJets at the time of purchase, but amounts expended by RS Air and Perlman to engage in legal disputes with NetJets and to find other means of air travel. *See* Counterclaim, ¶¶ 34, 37, 50. These amounts were received by non-parties; they were not taken or acquired by NetJets. *See Zest Anchors, LLC v. Geryon Ventures, LLC*, No. 22-CV-230 TWR (NLS), 2023 WL 2903668, at **7–8 (S.D. Cal. Apr. 10, 2023) (the value of lost money, time, and resources is not recoverable under the FAL when they are not received by the false advertiser); *Sharpe v. Puritan's Pride*, 466 F. Supp. 3d 1066, 1071 (N.D. Cal. 2020) (restitution is the return of illicit profits).

Accordingly, the Court finds that all of Perlman's consumer claims under the UCL and FAL regarding NetJets's alleged representations about financial benefits fail as a matter of law.

## VI. Conclusion

For the reasons stated above, NetJets' motion to dismiss defendant Perlman's counterclaims (doc. 48) is GRANTED.

DATE: September 25, 2024         *s/ James L. Graham*
                                  JAMES L. GRAHAM
                                  United States District Judge

20