IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NetJets Aviation, Inc., *et al.*,

    Plaintiffs,

v.

Stephen G. Perlman., *et al.*,

    Defendants.

Case No: 2:22-cv-2417

Judge Graham

Magistrate Judge Jolson

<u>Opinion and Order</u>

Plaintiffs NetJets Aviation, Inc., NetJets Sales, Inc., and NetJets Services, Inc. bring this action for declaratory judgment. NetJets seeks a declaration that defendants Stephen G. Perlman and the Stephen G. Perlman Revocable Trust are the alter egos of RS Air, LLC, a bankrupt entity. NetJets obtained a judgment of over $1.7 million against RS Air in bankruptcy court. If NetJets is successful in this action, then Perlman and the Trust will be liable for the judgment against RS Air. This matter is before the Court on the parties' cross-motions for summary judgment.

I.

The factual background concerning the parties' relationship and their history of litigation is largely undisputed and has been detailed in prior orders of this Court and by other courts. *See* Doc. 34, pp. 1–9; Doc. 105, pp. 1–3; *see also In re RS Air, LLC*, No. 20-51604 (N.D. Cal. Bankr. Ct.); *In re RS Air, LLC*, No. 21-1227 (B.A.P. 9th Cir.); *In re RS Air, LLC*, No. 21-1102 (B.A.P. 9th Cir.); *In re RS Air, LLC*, No. 21-1080 (B.A.P. 9th Cir.); *NetJets Aviation, Inc. et al. v. RS Air, LLC*, No. 18CV5301 (Franklin Cnty. Ct. C.P.). The parties' briefs also provide detailed descriptions of the factual and procedural background. *See* Doc. 107, pp. 2–4; Doc. 108, pp. 2–6.

Briefly stated, NetJets operates a fractional aircraft program whereby participants can purchase or lease an interest in an aircraft. In 2001 Perlman formed RS Air as a Delaware limited liability company for the sole purpose of purchasing and holding a fractional share in a NetJets aircraft. Either Perlman or the Trust has been the sole member of RS Air, and Perlman has been its sole manager. Over time, RS Air bought shares in two other aircraft. Under a series of purchase and management

1

agreements, RS Air was entitled to a certain number of flight hours per year for each aircraft and had to pay fees for various management and support services provided by NetJets.

The parties' relationship deteriorated in July 2017 when an aircraft in which RS Air owned an interest was involved in a non-injury incident. The aircraft was damaged and declared a total loss for insurance purposes. Perlman believed that NetJets had concealed information about the incident and the insurance proceeds, breached its contractual obligations, and acted in bad faith in attempting to enter into an aircraft substitution agreement with RS Air. NetJets maintained that it had fully complied with its contractual obligations to RS Air and that its substitution offer was fair.

Litigation ensued in Ohio, where NetJets is based. Prior to the conclusion of the Ohio litigation, RS Air filed a Chapter 11 bankruptcy petition in November 2020 in the Northern District of California, where RS Air was based and where Perlman resides. NetJets filed a proof of claim against RS Air for unpaid amounts under the management agreements. The bankruptcy court allowed NetJets' claim in the amount of $1,767,571.15, following a setoff.

NetJets filed this action, invoking the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. NetJets seeks recovery on the allowed bankruptcy claim, plus interest, from Perlman and the Trust as alleged alter egos of RS Air.

## II.

The parties have each moved for summary judgment. Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

## III.

Both sides agree that Delaware law applies to NetJets' alter ego claim, as the Court previously held. *See* Doc. 34, p. 11 (finding under Ohio choice-of-law rules that Delaware law applies because RS Air is a Delaware limited liability company). And both sides agree on the legal standard and test which apply under Delaware law to determine if Perlman and the Trust are alter egos of RS Air. "The

purpose of allowing the corporate veil to be pierced on an alter ego theory is to hold the party actually responsible for the inequitable conduct accountable and to prevent that party from using another corporation to shield itself from liability." *In re Opus East, LLC*, 528 B.R. 30, 57–58 (Bankr. D. Del. 2015), *aff'd*, No. 09-12261, 2016 WL 1298965 (D. Del. Mar. 31, 2016), *aff'd*, 698 Fed. App'x 711 (3d Cir. 2017) (summary order); *see also Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) (alter ego theory applies where dominant person or company "has created a sham entity designed to defraud investors and creditors"). To prevail on an alter ego claim, plaintiff must show that the company and its alleged alter ego "operated as a single economic entity" and that "an overall element of injustice or unfairness is present." *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008).

A multi-factor test applies to determine whether a "single economic entity" existed: "(1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders." *Id.* at 528–29 (citing *United States v. Pisani*, 646 F.2d 83, 88 (3d. Cir. 1981)); *accord Maloney-Refaie v. Bridge at Sch., Inc.*, 958 A.2d 871, 881 (Del. Ch. 2008). "'While no single factor justifies a decision to disregard the corporate entity,' some combination of the above is required, and 'an overall element of injustice or unfairness must always be present, as well.'" *Trevino*, 583 F. Supp. 2d at 529 (quoting *U.S. v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988)).

An area of disagreement is plaintiff's burden of proof. NetJets argues that it must prove its claim by a preponderance of the evidence, while defendants contend that the standard is somewhat greater. Their disagreement stems from the uncertainty in the case law, which another court aptly summarized as follows:

> [T]he Court must determine what burden of proof Delaware would apply to an alter-ego claim. Delaware courts have not directly addressed the burden of proof required to prevail on a veil-piercing claim. There is a presumption in Delaware, however, that the burden of proof in civil cases is a preponderance of the evidence. *Warwick v. Addicks*, 157 A. 205, 206–07 (Del. Super. Ct. 1931). Courts applying Delaware law often discuss alter ego and veil piercing without mentioning any heightened evidentiary standard. *See, e.g.*, *Harper v.* [*Delaware Valley Broadcasters, Inc.*, 743 F. Supp. 1076, 1085–86 (D. Del.1990)]. This seems to indicate that the traditional burden, preponderance of the evidence, applies to alter-ego claims under Delaware law.
>
> Nevertheless, numerous Delaware courts have noted that convincing a Delaware court to pierce the corporate veil is a difficult task. *See Wallace ex. rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999); *Harco Nat'l Ins. Co. v.*

3

> *Green Farms, Inc.*, Civ. A. No. 1131, 1989 WL 110537, at *4 (Del. Ch. Sept. 19, 1989). At least one Delaware court noted that it would not disregard the corporate form absent "compelling cause." *Midland Interiors, Inc. v. Burleigh*, No. Civ. A. 18544, 2006 WL 3783476, at *3 (Del. Ch. Dec. 19, 2006). Federal courts applying Delaware law have noted that Delaware requires a strong case to pierce the corporate veil and that there is a high burden on a party seeking to disregard the corporate form. *Alberto v. Diversified Group, Inc.*, 55 F.3d 201, 205–07 (5th Cir. 1995); *TransUnion LLC v. Credit Research, Inc.*, No. 00 C 3885, 2001 WL 648953, at *8 (N.D. Ill. June 4, 2001).
>
> However, only one case applying Delaware law has actually held that the burden might be higher than a preponderance of the evidence. *See In re Foxmeyer Corp.*, 290 B.R. 229, 237 (Bankr. D. Del. 2003). In that case, the bankruptcy court found it nonsensical that the preponderance of the evidence standard could apply where numerous Delaware courts had noted that the party seeking to pierce the veil had a heavy burden and that persuading a Delaware court to disregard the corporate form was a difficult task. *Id.* at 237. Based on this reasoning, *Foxmeyer* held "the appropriate standard of proof by which one must prove a case for a piercing of the corporate veil under Delaware law is, if not a clear and convincing evidence standard, at least somewhat greater than merely a preponderance of the evidence standard." *Id.* Notably, however, even this court did not find that the standard was clear and convincing evidence, and it failed to elaborate on what this potential intermediate standard would be because it found that the bankruptcy trustee did not even satisfy the minimal preponderance of the evidence standard. *Id.*

*ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 317–18 (S.D. Tex. 2008) (concluding that a preponderance of the evidence standard applied). *See also Opus East*, 528 B.R. at 57, 66 (citing *Foxmeyer*'s "somewhat greater" language but applying a preponderance of the evidence standard).

This Court will apply a preponderance of the evidence standard for purposes of the cross-motions for summary judgment. In the absence of any Delaware case law defining the contours of a "somewhat greater" than the preponderance standard, the Court agrees with the reasoning in *ASARCO* that Delaware courts generally apply a preponderance standard in civil cases. *See Warwick*, 157 A. at 206. That being said, the Cort recognizes that "limited liability is the general rule, not the exception," and thus piercing the corporate veil should not be done lightly. *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 270 (D. Del. 1989) (corporate form should be disregarded only in "exceptional circumstances"); *accord Opus East*, 528 B.R. at 57–58 (party seeking to pierce the corporate veil must demonstrate "substantial reasons" for doing so).

IV.

The Court now turns to application of the test for alter ego liability. In a case where the summary judgment record is several thousand pages long, perhaps it is not a surprise that each side has put forth evidence which tends to support their respective positions.

4

On the issue of whether defendants[1] and RS Air operated as a single economic entity, NetJets offers evidence that recurring payments from Perlman were RS Air's only source of revenue. *See, e.g.*, Doc. 106-2 at PAGEID 2907. Those funds in turn were used to pay RS Air's obligations to NetJets. RS Air had no capital to speak of, in that Perlman routinely kept its bank account balance at less than $10,000. *See, e.g.*, Doc. 106-3 at PAGEID 3127. Perlman alone exercised the discretion to take RS Air into insolvency, which he did. RS Air also did not observe many common corporate formalities. It had no office space or physical presence. Besides Perlman, it had no officers, employees or managers. *See, e.g.*, Doc. 106-6 at PAGEID 5633–34 (March 25, 2021 Perlman Decl., ¶ 8). Perlman utilized a handful of employees from his other companies to perform occasional work for RS Air, including booking flight time, paying bills to NetJets, and tracking contracts with NetJets. *See, e.g., id.* RS Air did not have any agreements relating to, or provide any compensation for, those services it received. *See, e.g.*, Doc. 106-5 at PAGEID 4930–32. RS Air kept no business records and did not maintain any insurance policies. *See, e.g.*, Doc. 106-5 at PAGEID 4906, 4911–12. NetJets has pointed to evidence supporting a finding that RS Air, with no independent operations, was simply the façade through which Perlman interacted with NetJets, whether their interaction concerned the flight-sharing program or concerned litigation between the parties – litigation which Perlman funded on RS Air's behalf. *See, e.g.*, Doc. 7-1 at PAGEID 96 (Aug. 8, 2022 Perlman Decl., ¶ 10).

Defendants have put forth evidence of their own which lends support to a conclusion that Perlman and RS Air did not operate as a single economic entity. RS Air, though having a modest account balance, was not late on payments to creditors and paid NetJets over $9.4 million under their contracts. *See, e.g.*, Doc. 108-1 at PAGEID 6514 (Nov. 14, 2024 Perlman Decl., ¶ 13); Doc. 108-2 at PAGEID 6519. RS Air remained solvent until its filing for bankruptcy protection in 2020. Perlman did not commingle RS Air's funds with those belonging to him or his other business entities, and he did not take funds from RS Air for his benefit and to the detriment of creditors. *See, e.g., id.* at PAGEID 6514 (Nov. 14, 2024 Perlman Decl., ¶¶ 11–12). Defendants acknowledge that Perlman received a tax depreciation benefit from RS Air, but argue that it should not be considered siphoning because this type of tax arrangement is common (whereby the principal of a pass-through entity receives the tax benefit) and did not affect RS Air's financial position. Defendants also submit

---

[1] NetJets contends that Perlman and the Trust should themselves be considered one-and-the-same, as Perlman has had complete and sole control over the Trust. Defendants do not contest this point. *See* Doc. 99 at PAGEID 2517 (stating that defendants "will not dispute, that for purposes of this litigation, there is no distinction between Mr. Perlman and the Trust, and that both are interchangeable for purpose of the declaratory relief sought by NetJets in this case").

5

evidence that RS Air observed corporate formalities in that it kept its own separate bank accounts, retained an accountant, filed all necessary tax returns, and hired its own legal counsel.  *See*, *e.g.*, *id.* at PAGEID 6513 (Nov. 14, 2024 Perlman Decl., ¶¶ 9–10).  According to defendants, RS Air could not have been a façade because of evidence that RS Air had a legitimate purpose, that NetJets knowingly dealt with RS Air (and was not confused that it was dealing with Perlman), and that Perlman kept RS Air distinct in form and function from his other business entities.

With regard to the second component of an alter ego claim – the existence of an overall element of injustice or unfairness – NetJets offers evidence that Perlman manipulated RS Air's finances so it went bankrupt on the eve of a scheduled trial in Ohio state court in litigation brought by NetJets against RS Air.  NetJets further contends that Perlman engaged in unfair conduct once the bankruptcy petition was filed.  RS Air had four creditors besides NetJets.  The four creditors were firms which provided professional services (attorneys, accountants) to RS Air and which were owed relatively small amounts (from $660 to $25,109) which undisputedly Perlman could have caused RS Air to repay.  *See*, *e.g.*, Doc. 106-5 at PAGEID 5218–19.  According to evidence submitted by NetJets, one could characterize the conduct of the four other creditors as being cooperative with Perlman rather than acting in their own interests.  *See*, *e.g.*, Doc. 107 at PAGEID 6090–6102 (documenting evidence that Perlman communicated extensively with the four creditors in an apparent effort to defeat NetJets' alter ego theory in bankruptcy court).  NetJets also points to evidence suggesting that Perlman made misrepresentations to create the appearance that RS Air had been a legitimate business with active operations, again in an effort to gain a tactical advantage in bankruptcy court.  *See*, *e.g.*, *id.* at PAGEID 6103–6108.  In NetJets' view, Perlman attempted to work a fraud or injustice by controlling RS Air in a manner to avoid paying its financial obligations to NetJets, its only true non-insider creditor.

Defendants argue that the injustice required is in the abuse of the corporate form itself, not in an alleged misuse of bankruptcy proceedings.  *See Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 619–20 (D. Del. 2018).  Defendants submit that the unpaid debt owed by RS Air to NetJets did not arise because of the normal business operations of RS Air; rather, it arose because of the legal dispute following the 2017 incident involving an aircraft in which RS Air held a fractional interest.  *See*, *e.g.*, Doc. 108-1 at PAGEID 6516 (Nov. 14, 2024 Perlman Decl., ¶¶ 19–21) (stating that RS Air was forced into bankruptcy because NetJets made a $2 million claim in litigation for jet storage fees and attorneys' fees).  Defendants argue that there was nothing unfair about RS Air seeking the bankruptcy protection available to it.

Upon consideration of the parties' briefs and the voluminous evidentiary record, the Court finds that genuine issues of material fact exist with respect to each of the two components of NetJets' alter ego claim. Genuine issues of fact exist as to whether RS Air and Perlman operated as a single economic entity and as to the existence of an overall element of injustice or unfairness. Of particular significance is the credibility of the testimonial evidence provided by Perlman himself in his deposition and across the many declarations prepared for the bankruptcy proceedings and this litigation. The factfinder will be better positioned to make credible determinations after live witness testimony in the courtroom during trial.

Accordingly, the cross-motions for summary judgment are each denied.

V.

The parties have filed two other motions. One is NetJets' motion to strike expert Terry Lloyd's report, which defendants submitted in support of their motion for summary judgment. NetJets argues that Mr. Lloyd's report is inadmissible because he purports to render an opinion on the ultimate issue in this case – whether Perlman was the alter ego of RS Air. *See* Doc. 108-3 at PAGEID 6542 (Mr. Lloyd concluding his report with the opinion that "the weight of the evidence" shows that Perlman was not the alter ego of RS Air). The Court agrees that Mr. Lloyd's legal conclusions are inadmissible, *see Harrah's Ent., Inc. v. Ace Am. Ins. Co.*, 100 Fed. App'x 387, 394 (6th Cir. 2004), and therefore will exclude them from consideration. However, the Court denies the motion to strike the entire report because Mr. Lloyd's report analyzes discrete factual issues, such as RS Air's adequacy of capitalization and its observance of corporate formalities, which are relevant to the factors which must be considered in resolving an alter ego claim.

The second motion is brought by defendants, who seek leave to amend their Answer to add an affirmative defense of federal preemption. The motion was filed after the parties submitted their cross-motions for summary judgment. Defendants first raised the preemption issue in their response brief to NetJets' motion for summary judgment. Responding to NetJets' claim that Perlman engaged in unfair conduct by causing RS Air to go bankrupt and avoid its obligations to NetJets, defendants argued that a federal preemption doctrine bars state law claims which seek to impose liability for alleged bad-faith bankruptcy filings or alleged misconduct committed in the course of bankruptcy proceedings. *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 426 (6th Cir. 2000) ("Permitting assertion of a host of state law causes of action to redress wrongs under the Bankruptcy Code would undermine the uniformity the Code endeavors to preserve . . . ."). In reply to defendants' invocation of the

7

preemption doctrine, NetJets argued that defendants' reliance on a preemption doctrine amounted to the assertion of an affirmative defense, which had been waived because defendants did not include it in their Answer.

NetJets' waiver argument prompted defendants to move for leave to amend their Answer. NetJets opposes the motion on the grounds that defendants missed the deadline to amend the pleadings by two years and cannot demonstrate good cause for doing so when they were well aware from the Complaint that NetJets was alleging that the course of the bankruptcy proceedings showed misconduct on the part of Perlman.

Under Federal Rule of Civil Procedure 16(b)(4), the district court may modify a case schedule "only for good cause." *See Cooper v. Bischoff*, No. 2:23-CV-03753, 2025 WL 2180377, at *1 (S.D. Ohio Aug. 1, 2025) (explaining that after the deadline for amending the pleadings has passed, Rule 16(b)'s "good cause" standard must be satisfied before a court considers whether to grant leave to amend under Rule 15(a)). The main consideration for good cause typically is "'the moving party's diligence in attempting to meet the case management order's requirements.'" *Mosley v. Spartan Freight Sys., Inc.*, No. 2:16-CV-01197, 2019 WL 3818760, at *2 (S.D. Ohio Aug. 14, 2019) (quoting *Commerce Benefits Grp. Inc. v. McKesson Corp.*, 326 Fed. App'x 369, 377 (6th Cir. 2009)). A court should also consider the potential prejudice to the nonmovant. *See Cooper*, 2025 WL 2180377, at *1 (citing *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003)).

The Court finds that defendants were not diligent. They filed their Answer on the date on which it was due, January 13, 2023, *see* Docs 29, 36, 40, but did not move to amend the Answer until two years later, on January 27, 2025, after the briefing on the motions for summary judgment was completed. Defendants argue that it was not until NetJets filed its motion for summary judgment before defendants could understand "the full extent" to which NetJets were relying on defendants' conduct during the bankruptcy proceedings to support the alter ego claim. Doc. 126 at PAGEID 7235. The Court disagrees, as the original Complaint directly referenced Perlman's conduct in connection with the bankruptcy proceedings as supporting NetJets' alter ego theory. *See* Compl. (Doc. 1), ¶¶ 42-68 (factual allegations upon which NetJets has based its argument as to the existence of an overall element of injustice or unfairness, including that Perlman made misrepresentations in the bankruptcy proceedings to create the appearance of RS Air being a legitimate business, and that four creditors had assisted Perlman rather than acted in their own interests). Indeed, those allegations are in a section of the Complaint entitled, "Additional Evidence Supporting NetJets' Alter Ego Claims that Emerged During the Bankruptcy Case." The Court finds that defendants were aware, when they

8

filed their original Answer, of the factual basis which forms the bankruptcy preemption defense, and that this consideration weighs against a finding of good cause under Rule 16(b). *See Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (affirming denial of leave to amend the complaint where "plaintiff was obviously aware of the basis of the claim for many months").

Defendants argue that no prejudice would result to NetJets if leave to amend were granted because the preemption issue is a legal one for which no additional discovery would be needed. NetJets responds that the Court need not give this factor any weight. *See Mosley*, 2019 WL 3818760, at *2 (S.D. Ohio Aug. 14, 2019) ("Even if an amendment would not prejudice the nonmoving party, a plaintiff must still provide good cause for failing to move to amend by the Court's deadline."). The Court, however, finds that the Sixth Circuit requires consideration of prejudice in determining whether good cause exists under Rule 16(b)(4). "In determining whether the 'good cause' standard is met, the district court must consider whether the amendment will prejudice the party opposing it." *Korn v. Paul Revere Life Ins. Co.*, 382 Fed. App'x 443, 449 (6th Cir. 2010) (citing *Leary*, 349 F.3d at 906, 908). *See also Leary*, 349 F.3d at 906 ("[W]hile prejudice to the defendant is not an express component of Rule 16, it is nonetheless a relevant consideration . . . .") (internal quotation marks omitted); *Wagner v. Mastiffs*, No. 2:08-CV-431, 2011 WL 124226, at *4 (S.D. Ohio Jan. 14, 2011) ("Further, although the primary focus of the inquiry is upon the moving party's diligence, the presence or absence of prejudice to the other party or parties is a factor to be considered.") (citing *Inge v. Rock Financial Corp.*, 281 F.3d 613 (6th Cir. 2002).

Here, NetJets does not argue that any prejudice would result from granting leave to amend. The Court agrees with defendants that the preemption issue is a legal one for which there is no need to reopen discovery. Nor would consideration of the defense delay the proceedings.

The Court is thus faced with an unusual situation – extreme delay on the part of defendants in seeking leave to amend, but an absence of prejudice to NetJets. The purpose of Rule 16(b) is to ensure that "'at some point both the parties and the pleadings will be fixed.'" *Leary*, 349 F.3d at 906 (quoting Advisory Committee Notes, 1983 Amendment). This purpose would not be defeated if defendants were granted leave to amend. The legal issue of whether preemption should apply is one which the Court can resolve at the trial stage. Allowing the pleadings to be fixed upon the amendment of the Answer would still provide the parties with ample time to prepare to state their cases on the issue. The Court believes that the defense raises important concerns – about the availability of state law claims to redress wrongs and about the need to protect the uniformity of the Bankruptcy Code –

9

which, in the interests of justice, should be addressed. For those reasons, the Court finds that good cause exists to allow defendants leave to amend the Answer.

VI.

For the reasons state above, the parties' cross motions for summary judgment (Docs. 106, 107, 108) are DENIED.

NetJets' motion to strike the expert report of Terry Lloyd (Doc 112) is GRANTED IN PART AND DENIED IN PART.

Defendants' motion for leave to amend the Answer (Doc. 126) is GRANTED. Defendants shall file an Amended Answer on or before October 23, 2025.


Date: October 9, 2025                                  *s/ James L. Graham*
                                                       James L. Graham
                                                       United States District Judge